IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **RUTH ANN RICE,** | * |
| | * |
| Plaintiff, | * |
| | *   **Civil No. TMD 13-3805** |
| v. | * |
| | * |
| | * |
| **CAROLYN W. COLVIN,** | * |
| **Acting Commissioner of Social Security,** | * |
| | * |
| Defendant. | * |

\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING PLAINTIFF'S**
**ALTERNATIVE MOTION FOR REMAND**

Ruth Rice ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment or Alternative Motion for Remand (ECF No. 11) and Defendant's Motion for Summary Judgment (ECF No. 13).[1] Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's Alternative Motion for Remand (ECF No. 11) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

I

**Background**

Plaintiff was born in 1959, has an eleventh-grade education, and previously worked as a school bus driver.  R. at 28-29.  Plaintiff applied protectively for DIB and SSI on September 20, 2010, alleging disability beginning on September 26, 2007 (later amended to October 3, 2008), due to a back injury, right arm and shoulder injuries, right hip and leg pain, a brain tumor, asthma, colon disease, and acid reflux disease.  R. at 109-22, 141-42, 146.  The Commissioner denied Plaintiff's applications initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 62-74, 77-82.  On June 11, 2012, ALJ Thomas Mercer Ray held a hearing in Washington, D.C., at which Plaintiff and a vocational expert ("VE") testified.  R. at 24-61.  On August 28, 2012, the ALJ issued a decision finding Plaintiff not disabled since the amended alleged onset date of disability of October 3, 2008.  R. at 8-23.  Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on October 17, 2013.  R. at 3-7.  The ALJ's decision thus became the final decision of the Commissioner.  *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On December 17, 2013, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.  **Alla Taller, M.D.**

On December 15, 2010, Plaintiff underwent a consultative psychiatric evaluation by Dr. Taller, which the ALJ summarized in his decision:

> A psychiatric evaluation of [Plaintiff] was performed by Alla Taller, M.D. on December 15, 2010 at the request of the Maryland Disability Determination Services to evaluate [Plaintiff's] complaint of anxiety. [Plaintiff] reported that she came alone and drove her own car to the interview. She complained of experiencing pain in her lower back and stated that movements in her right shoulder are limited. [Plaintiff] also complained of experiencing episodes consistent with panic attacks when she gets short of breath and which happens about twice a week. [Plaintiff] reported that she was never treated by a psychiatrist and never experienced symptoms of depression or suicidal ideation. Upon examination, Dr. Taller noted that [Plaintiff] did not appear in any physical distress although she rated the pain in her lower back as 6/10. Her speech was coherent and normal in tone, rate, and volume. Her affect was somewhat quiet, euthymic, and mood congruent, and her thought process was goal directed. She denied feelings of worthlessness and she denied suicidal ideations. She was oriented to the exact date and the day of the week, and she demonstrated average fund of knowledge and intelligence. Her capacity for abstract thinking was intact and her judgment and insight were fair to good. Dr. Taller diagnosed [Plaintiff] with a history of anxiety disorder. She stated that [Plaintiff's] capacity for understanding was preserved, her short-term memory and sustained concentration were adequate, and her social interaction was normal.

R. at 15; *see* R. at 349-54.

B.  **State Agency Medical Consultants**

On December 28, 2010, A. Serpick, M.D., a state agency medical consultant, assessed Plaintiff's physical residual functional capacity ("RFC"). R. at 355-63. Dr. Serpick opined that Plaintiff could (1) lift and/or carry 50 pounds occasionally and 25 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform limited pushing and/or pulling with the upper extremities. R. at 356. Plaintiff frequently could climb, balance, stoop, kneel, crouch, and crawl.

R. at 357.  Plaintiff's reaching was limited because of her right shoulder, but she had no visual, communicative, or environmental limitations.  R. at 358-59.

On January 4, 2011, K. Wessel, Ed.D., evaluated on a psychiatric review technique form ("PRTF") Plaintiff's mental impairments under paragraph B of Listing 12.06 relating to anxiety-related disorders.  R. at 368-81.  Dr. Wessel opined that Plaintiff's anxiety caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration.  R. at 378.  Dr. Wessel did not find evidence to establish the presence of the criteria under paragraph C of Listing 12.06.  R. at 379.  Accordingly, Dr. Wessel assessed Plaintiff's mental RFC (R. at 364-67) and opined that she was moderately limited in her ability to (1) maintain attention and concentration for extended periods and to (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Plaintiff otherwise was not significantly limited.  R. at 364-65.  Dr. Wessel's RFC assessment thus provided:

> Evidence appears credible and shows the presence of a Severe Mental Impairment using listing 12.06.
>
> [Mental RFC] assessment is made as the condition does not meet or equal a listed impairment.  Ratings show moderate limitations in areas dealing with continuity of performance, and adaptation.
>
> <u>Understanding, Memory, and Sustained Attention</u>
>
> Residual capacity finds that [Plaintiff] functions in a generally independent fashion and can meet various personal needs from a mental and cognitive standpoint.  [Plaintiff] is capable of completing daily living functions within the constraints of the mental conditions.  A/C fluctuates at times.  This individual manages within a basic routine.

<u>Socialization</u>

[Plaintiff] can relate with others and is capable of showing socially appropriate behaviors.  [Plaintiff] is capable of negotiating in the community.

<u>Adaptation</u>

[Plaintiff] reports no concerns over safety and making plans independently.

Overall, [Plaintiff's RFC] appears compatible with work related functions equated with competitive employment.

R. at 366.  On June 3, 2011, another state agency consultant, S. Boyer, Ph.D., affirmed Dr. Wessel's determination.  R. at 398.

On May 26, 2011, another state agency medical consultant, William Hakkarinen, M.D., again assessed Plaintiff's physical RFC.  R. at 389-97.  Dr. Hakkarinen opined that Plaintiff could (1) lift and/or carry 20 pounds occasionally and 10 pounds frequently; (2) stand and/or walk for a total of about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 390.  Plaintiff frequently could balance, stoop, kneel, crouch, crawl, and climb ramps and stairs (but never ladders, ropes, or scaffolds), and she had no visual, communicative, or environmental limitations.  R. at 391-93.  Plaintiff had occasional limitations in overhead and repetitive reaching on the right.  R. at 392.

## III

### Summary of ALJ's Decision

On August 28, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the amended alleged onset date of disability of October 3, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a

combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a counter clerk, router, or office helper. R. at 13-18. The ALJ accordingly found that she was not disabled from October 3, 2008, through the date of the decision. R. at 18.

In so finding, the ALJ found that Plaintiff's right shoulder arthropathy, asthma, and bursitis were severe impairments. R. at 13. The ALJ then found:

> No treating, examining, consulting, or reviewing physician has opined that [Plaintiff's] impairments equal in severity [to] any of the listed impairments. The undersigned finds that, although [Plaintiff's] impairments are severe, they are not attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Listing of Impairments, Appendix 1 to Subpart P, 20 CFR, Part 404.

R. at 15.

The ALJ further found that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). [Plaintiff] can frequently climb ramps and stairs but she can never climb ladders, ropes, or scaffolds. [Plaintiff] can also frequently balance, stoop, kneel, crouch, and crawl. She can occasionally reach in all directions with her dominant arm but has no limit in reaching with her non-dominant arm.

R. at 15-16.[2] In so doing, the ALJ "accorded significant weight to the opinions of the State agency medical consultants, because they are deemed experts and highly knowledgeable in the area of disability and because their opinions are largely consistent with the evidence of record as a whole[.]" R. at 17.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

V

<strong><u>Substantial Evidence Standard</u></strong>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is

supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Plaintiff maintains that the ALJ failed to follow the special technique (the psychiatric review technique or "PRT") outlined in 20 C.F.R. §§ 404.1520a and 416.920a for evaluating mental impairments at steps two and three of the sequential evaluation process. Pl.'s Mem. Supp. Mot. Summ. J. 3-8, ECF No. 11-1. The Commissioner asserts that "the ALJ was not required to undertake an evaluation or analysis of [Plaintiff's] mental impairment" because she did not allege that she had a mental impairment. Def.'s Mem. Supp. Mot. Summ. J. 6, ECF No.

13-1. The Commissioner further contends that, even if the ALJ had erred at step two of the sequential evaluation process, the ALJ fully considered Plaintiff's alleged mental impairment during the subsequent steps of the evaluation. *Id.* at 6-7. As discussed further below, the Court remands this case for further proceedings.

In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a. These regulations require application of the PRT at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review. 20 C.F.R. §§ 404.1520a(a), 416.920a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1). If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1). If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in

severity to any listed mental disorder. *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2). If so, then the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's RFC. *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

When a claimant has presented a colorable claim of mental impairment, the ALJ is required "to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions. Failure to do so requires remand." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 726 (9th Cir. 2011) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005) (per curiam)); *see* 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4). *But see Pepper v. Colvin*, 712 F.3d 351, 365-67 (7th Cir. 2013) (under some circumstances, failure to use explicitly special technique may be harmless error); *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 657 (6th Cir. 2009) (holding that "the special technique of § 404.1520a does not confer such an 'important procedural safeguard' upon claimants that an ALJ's failure to rate the B criteria will rarely be harmless"). "The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas." *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)). "In other words, the regulations contemplate that written decisions at the ALJ and Appeals Council levels should contain a 'narrative rationale,' instead of the 'checklist of . . . conclusions' found in a PRTF." *Keyser*, 648 F.3d at 725 (alteration in original).

With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[a]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories,

and using a post office." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1). "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability. [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction." *Id.* Moreover, "[s]*ocial functioning* refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." *Id.* § 12.00(C)(2). Further, "[c]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 12.00(C)(3). "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits." *Id.* Finally, "[e]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4). "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id.* Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and

directing household); or other relevant information in the record about the existence, severity, and duration of the episode." *Id.* "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." *Id.*

Here, the Commissioner contends that "the threshold question of whether the ALJ should have followed any procedure for evaluating mental impairments is not reached because Plaintiff did not allege that she had a mental impairment" when she either applied for benefits or testified before the ALJ. Def.'s Mem. Supp. Mot. Summ. J. 6, ECF No. 13-1. The Commissioner maintains that, in any event, in limiting Plaintiff to unskilled work, the ALJ considered Dr. Taller's opinion regarding Plaintiff's anxiety, and so the ALJ did not err in failing to use the PRT. *Id.* at 9. However, although an ALJ is not obliged to investigate a claim not presented at the time of the benefits application and not offered at the hearing as a basis for disability, *Meyer v. Colvin*, 754 F.3d 251, 256-57 (4th Cir. 2014) (citing *Halverson v. Astrue*, 600 F.3d 922, 934 (8th Cir. 2010)), in this case, Dr. Wessel, a state agency consultant, found that, as a result of her anxiety, Plaintiff experienced (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no episodes of decompensation of extended duration. R. at 378. Dr. Wessel further opined that Plaintiff was moderately limited in her ability to (1) maintain attention and concentration for extended periods and to (2) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. R. at 364-65. Dr. Wessel opined that Plaintiff's anxiety was a "severe" impairment, although it did not meet or equal a listed impairment. R. at 366. Although the ALJ stated that he gave significant weight to

14

Dr. Wessel's opinion, the ALJ did not otherwise mention Dr. Wessel's assessment regarding Plaintiff's mental RFC or her functional limitations relating to the paragraph B criteria of Listing 12.06. Accordingly, "there is not an 'accurate and logical bridge' between the ALJ's recitation of the mental medical evidence and the decision to account for [Plaintiff's] mental impairments by limiting [her] to unskilled work." *Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008); *see Felton-Miller*, 459 F. App'x at 231.

The Commissioner nonetheless maintains that any error at step two of the sequential evaluation process in failing to address the four functional areas of the special technique is not reversible error because the ALJ fully considered Plaintiff's anxiety during subsequent steps of the evaluation. Def.'s Mem. Supp. Mot. Summ. J. 6-7, ECF No. 13-1. However, "[b]ecause the ALJ's decision lacks consideration of these factors and their impact on his ultimate conclusion as to [Plaintiff's] RFC, [the Court] cannot even evaluate the Commissioner's contention that the ALJ's error was harmless." *Moore*, 405 F.3d at 1214; *accord Kohler v. Astrue*, 546 F.3d 260, 267 (2d Cir. 2008) (Sotomayor, J.) ("Effective review by this Court is frustrated by the [ALJ's] decision's failure to adhere to the regulations."); *Craft*, 539 F.3d at 675; *Owens v. Astrue*, No. PWG-09-899, 2011 WL 1135759, at *2-3 (D. Md. Mar. 24, 2011) (determining that ALJ's failure at step two to document application of criteria in 20 C.F.R. § 416.920a warranted remand). Remand in this case for the ALJ to apply the PRT in 20 C.F.R. §§ 404.1520a and 416.920a accordingly is warranted.

The Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007). In other words, "[l]ong-standing principles of administrative law require [the Court] to review the ALJ's decision based on the reasoning and factual findings

offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009); *see Ai Hua Chen v. Holder*, 742 F.3d 171, 180 (4th Cir. 2014) (reviewing court must judge propriety of agency action solely by grounds invoked by agency). Rather, "[t]he ALJ must accompany his decision with sufficient explanation to allow a reviewing Court to determine whether the Commissioner's decision is supported by substantial evidence." *Wiley v. Astrue*, Civil Action No. 1:07-00221, 2008 WL 4446679, at *6 (S.D.W. Va. Sept. 26, 2008). "[T]he [Commissioner] is required by both the Social Security Act, 42 U.S.C. § 405(b), and the Administrative Procedure Act, 5 U.S.C. § 557(c), to include in the text of her decision a statement of the reasons for that decision." *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986). The ALJ's decision "should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge . . . ." *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985) (per curiam). The duty of explanation is satisfied "[i]f a reviewing court can discern 'what the ALJ did and why he did it.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999). For these reasons, the Court remands this case for the ALJ to comply with 20 C.F.R. §§ 404.1520a and 416.920a. Because the Court concludes that the ALJ committed an error of law, the Court does not address Plaintiff's remaining arguments. *See Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 342 n.3 (4th Cir. 2012) (holding that ALJ committed legal error and accordingly declining to address ALJ's credibility findings or likely weight of evidence on remand); *Owens*, 2011 WL 1135759, at *3 n.8.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 13) is **DENIED**. Plaintiff's Motion for Summary Judgment (ECF No. 11) is **DENIED**. Plaintiff's Alternative Motion for Remand (ECF No. 11) is **GRANTED**. A separate order shall issue.

Date: January 8, 2015                                           /s/
                                                        Thomas M. DiGirolamo
                                                        United States Magistrate Judge